ORIGINAL

1  LYNN HUBBARD, III, SBN 69773
2  SCOTTLYNN J HUBBARD, IV, SBN 212970
   **DISABLED ADVOCACY GROUP, APLC**
3  12 Williamsburg Lane
   Chico, CA 95926
4  Telephone: (530) 895-3252
   Facsimile: (530) 894-8244
5
6  Attorneys for Plaintiff
7
8
9            UNITED STATES DISTRICT COURT
10          SOUTHERN DISTRICT OF CALIFORNIA
11
12
13  A.J. OLIVER,                          No. **'08 CV 1364 LAB POR**
14       Plaintiff,
                                          **Plaintiff's Complaint**
15       vs.
16  SOUTHBAY MARKETPLACE
17  HOLDINGS, LLC; PARTY CITY
    CORPORATION dba PARTY CITY
18  of NATIONAL CITY #521; MAC N
19  FRY, INC. dba McDONALD'S;
20  McDONALD'S CORPORATION;
    GROCERY OUTLET, INC. dba
21  GROCERY OUTLET #145; ROSS
22  DRESS FOR LESS, INC. dba ROSS
    DRESS FOR LESS #393; THE
23  OFFICE CLUB, INC. dba OFFICE
24  DEPOT #0963; DLC
    ACQUISITION CORP. dba
25  DIXIELINE LUMBER & HOME
26  CENTER; LN REAL ESTATE,
27  LLC,
28       Defendants.

---

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

**FILED**

JUL 2 4 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ECL___ DEPUTY

# I. SUMMARY

1.    This is a civil rights action by plaintiff A.J. Oliver ("Oliver") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complexes known as:

McDonald's
3400 Highland Avenue
National City, CA 91950
(hereafter "the McDonald's Facility")

Office Depot #0963
3430 Highland Avenue
National City, CA 91950
(hereafter "the Office Depot Facility")

Dixieline Lumber & Home Center
3450 Highland Avenue
National City, CA 91950
(hereafter "the Dixieline Facility")

Grocery Outlet #145
3446 Highland Avenue
National City, CA 91950
(hereafter "the Grocery Outlet Facility")

Party City of National City #521
3410 Highland Avenue
National City, CA 91950
(hereafter "the Party City Facility")

Ross Dress for Less #393
3420 Highland Avenue
National City, CA 91950
(hereafter "the Ross Facility")

2.    Pursuant to the Americans with Disabilities Act of 1990, ( 42 U.S.C. §§ 12101 et seq.), and related California statutes, Oliver seeks damages, injunctive and declaratory relief, and attorney fees and costs, against:

- Mac N Fry, Inc. dba McDonald's; McDonald's Corporation; and, Southbay Marketplace Holdings, LLC (hereinafter the "McDonald's Defendants")
- The Office Club, Inc. dba Office Depot #0693 and Southbay Marketplace Holdings, LLC (hereinafter the "Office Depot Defendants")
- DLC Acquisition Corp. dba Dixieline Lumber & Home Center and LN Real Estate, LLC (hereinafter the "Dixieline Defendants")
- Grocery Outlet, Inc. dba Grocery Outlet #145 and Southbay Marketplace Holdings, LLC (hereinafter the "Grocery Outlet Defendants")
- Party City Corporation dba Party City of National City #521 and Southbay Marketplace Holdings, LLC (hereinafter the "Party City Defendants")
- Ross Dress for Less, Inc. dba Ross Dress for Less #393 and Southbay Marketplace Holdings, LLC (hereinafter the "Ross Defendants")

## II. JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law—arising from the same nucleus of operative facts—is predicated on 28 U.S.C. § 1367.

5.    Oliver's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6.    All actions complained of herein take place within the jurisdiction of the United States District Court, Southern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

IV. PARTIES

7.   The McDonald's Defendants own, operate, or lease the McDonald's Facility, and consist of a person (or persons), firm, or corporation.

8.   The Office Depot Defendants own, operate, or lease the Office Depot Facility, and consist of a person (or persons), firm, or corporation.

9.   The Dixieline Defendants own, operate, or lease the Dixieline Facility, and consist of a person (or persons), firm, or corporation.

10.   The Grocery Outlet Defendants own, operate, or lease the Grocery Outlet Facility, and consist of a person (or persons), firm, or corporation.

11.   The Party City Defendants own, operate, or lease the Party City Facility, and consist of a person (or persons), firm, or corporation.

12.   The Ross Defendants own, operate, or lease the Ross Facility, and consist of a person (or persons), firm, or corporation.

13.   Oliver suffered a stroke approximately 13 years ago. The stroke left him paralyzed, speech impaired, and unable to stand or walk. Oliver requires the use of a motorized wheelchair when traveling about in public. Consequently, Oliver is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

V. FACTS

14.   The McDonald's Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

15.   The Office Depot Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

16.    The Dixieline Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

17.    The Grocery Outlet Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

18.    The Party City Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

19.    The Ross Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

20.    Oliver visited these facilities and encountered barriers (both physical and intangible) that interfered with—if not outright denied—his ability to use and enjoy the goods, services, privileges, and accommodations offered at all of the facilities.

21.    To the extent known by Oliver, the barriers at the McDonald's Facility included, but are not limited to, the following:

- The access aisle adjacent to the disabled parking has a slope and cross slope that exceed 2.0% due to the encroaching built up curb ramp;
- There is no International Symbol of Accessibility (hereafter referred to as "ISA") mounted at the entrance;
- The service counter is too high and does not have a portion lowered to accommodate patrons in wheelchairs;
- The pay point machine is mounted too high;
- The water closet stall door requires pinching, twisting, and/or grasping to operate;
- The side grab bar does not extend 24 inches in front of the water closet;

- The toilet tissue dispenser is an obstruction to the use of the side grab bar;
- The toilet tissue dispenser is mounted too high;
- The toilet tissue dispenser has sharp edges;
- The pipes underneath the lavatory are improperly and/or incompletely wrapped;
- There is no seating designated as being disabled; and,
- There is no disabled seating.

These barriers prevented Oliver from enjoying full and equal access at the McDonald's Facility.

22.    Oliver was also deterred from visiting the McDonald's Facility because he knew that the McDonald's Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). He continues to be deterred from visiting the McDonald's Facility because of the future threats of injury created by these barriers.

23.    To the extent known by Oliver, the barriers at the Office Depot included, but are not limited to, the following:

- The tow away signage posted is incorrect;
- The signage at the van accessible parking stall is incorrect;
- The slope and cross slope of the access aisle exceeds 2.0% due to the encroaching built up curb ramp;
- There is no ISA mounted at the entrance;
- There is no checkout stand or counter designated as being accessible to the disabled;
- The pay point machine is mounted too high; and,
- The pipes underneath the lavatories are not wrapped or are incorrectly wrapped.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1    These barriers prevented Oliver from enjoying full and equal access at the Office
2    Depot Facility.

3        24.    Oliver was also deterred from visiting the Office Depot Facility
4    because he knew that the Office Depot Facility's goods, services, facilities,
5    privileges, advantages, and accommodations were unavailable to physically
6    disabled patrons (such as himself). He continues to be deterred from visiting the
7    Office Depot Facility because of the future threats of injury created by these
8    barriers.

9        25.    To the extent known by Oliver, the barriers at the Dixieline Facility
10   included, but are not limited to, the following:

11   • The slope and cross slope of the sidewalk in front of the Dixieline Facility
12      exceed 2.0%;
13   • The access aisle has a slope and cross slope that exceed 2.0% due to the
14      encroaching built up curb ramp;
15   • The entrance door does not have accessible handles;
16   • There is no check out counter or aisle designated as accessible to the
17      disabled;
18   • The counters are too high and do not have a portion lowered to
19      accommodate patrons in wheelchairs;
20   • Due to the inward swing of the door, there is insufficient clear floor space
21      in front of the water closet;
22   • The door does not have a loop or U-shaped handle mounted below the
23      lock;
24   • The toilet tissue dispenser protrudes into the clear floor and maneuvering
25      space required to access the water closet;
26   • The pipes underneath the lavatory are improperly and/or incompletely
27      wrapped; and,

28

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1    • Due to the trash receptacle, there is insufficient strike side clearance when
2       leaving the restroom.

3  These barriers prevented Oliver from enjoying full and equal access in the
4  Dixieline Facility.

5      26.    Oliver was also deterred from visiting the Dixieline Facility
6  because he knew that the Dixieline Facility's goods, services, facilities,
7  privileges, advantages, and accommodations were unavailable to physically
8  disabled patrons (such as himself). He continues to be deterred from visiting the
9  Dixieline Facility because of the future threats of injury created by these barriers.

10      27.    To the extent known by Oliver, the barriers at the Grocery Outlet
11  Facility included, but are not limited to, the following:

12    • The signage in the van accessible parking stall is not correct;
13    • The access aisle has a slope and cross slope that exceed 2.0% due to the
14      encroaching built up curb ramp;
15    • There is no ISA mounted at the entrance;
16    • The flush valve is not located on the correct side of the water closet;
17    • The toilet tissue dispenser is not mounted in the correct position, both in
18      relation to the back wall, as well as to the front of the water closet;
19    • The toilet tissue dispenser protrudes into the clear floor and maneuvering
20      space required to access the water closet;
21    • The disposable seat cover dispenser is an obstruction to the use of the side
22      grab bar; and,
23    • The pipes underneath the lavatory are not wrapped.

24  These barriers prevented Oliver from enjoying full and equal access.

25      28.    Oliver was also deterred from visiting the Grocery Outlet Facility
26  because he knew that the Grocery Outlet Facility's goods, services, facilities,
27  privileges, advantages, and accommodations were unavailable to physically
28  disabled patrons (such as himself). He continues to be deterred from visiting the

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1  Grocery Outlet Facility because of the future threats of injury created by these

2  barriers.

3       29.    To the extent known by Oliver, the barriers at the Party City

4  included, but are not limited to, the following:

5  • The access aisle has a slope and cross slope that exceed 2.0% due to the

6     encroaching built up curb ramp;

7  • The signage in the van accessible space is not correct;

8  • The handles on the entrance door are not accessible;

9  • There is no checkstand designated as accessible to the disabled;

10 • The toilet tissue dispenser protrudes into the clear maneuvering space

11    needed to access the water closet;

12 • The toilet tissue dispenser is not mounted high enough;

13 • The disposable seat cover dispenser is mounted at more than 40 inches

14    from the floor;

15 • The disposable seat cover dispenser is mounted above and behind the

16    water closet, thereby causing it to be outside the required reach range

17    limits;

18 • The water closet is an obstruction to the use of the disposable seat cover

19    dispenser;

20 • The pipes underneath the lavatory are not wrapped;

21 • Due to the inward swing of the door, there is insufficient clear floor space

22    in front of the lavatory; and,

23 • There is not a clear 10 inches of unobstructed kick plate on the exit door.

24 These barriers prevented Oliver from enjoying full and equal access of the Party

25 City Facility.

26       30.    Oliver was also deterred from visiting the Party City Facility

27 because he knew that the Party City Facility's goods, services, facilities,

28 privileges, advantages, and accommodations were unavailable to physically

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1  disabled patrons (such as himself). He continues to be deterred from visiting the
2  Party City Facility because of the future threats of injury created by these
3  barriers.

4      31.   To the extent known by Oliver, the barriers at the Ross Facility
5  included, but are not limited to, the following:

6  • The access aisle has a slope and cross slope that exceed 2.0% due to the
7    encroaching built up curb ramp;

8  • The signage in the van accessible space is not correct;

9  • There is no ISA mounted at the entrance door;

10 • The handles on the entrance door are not accessible;

11 • There is no latch on the inside of the dressing room door;

12 • The dressing room door is not self closing;

13 • There is no 30 inch cut out on the bench in the dressing room;

14 • There is no check stand designated for the use of the disabled;

15 • The check out counters are too high and there is no portion lowered to
16   accommodate patrons in wheelchairs; and,

17 • The pay point machines are mounted too high.

18 These barriers prevented Oliver from enjoying full and equal access of the Ross
19 Facility.

20     32.   Oliver was also deterred from visiting the Ross Facility because he
21 knew that the Ross Facility's goods, services, facilities, privileges, advantages,
22 and accommodations were unavailable to physically disabled patrons (such as
23 himself). He continues to be deterred from visiting the Ross Facility because of
24 the future threats of injury created by these barriers.

25     33.   Oliver also encountered barriers at the facilities, which violate state
26 and federal law, but were unrelated to his disability. Nothing within this
27 Complaint, however, should be construed as an allegation that Oliver is seeking
28 to remove barriers unrelated to his disability.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

34.    The McDonald's Defendants knew that these elements and areas of the McDonald's Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.    Moreover, the McDonald's Defendants have the financial resources to remove these barriers from the McDonald's Facility (without much difficulty or expense), and make the McDonald's Facility accessible to the physically disabled.    To date, however, the McDonald's Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

35.    At all relevant times, the McDonald's Defendants have possessed and enjoyed sufficient control and authority to modify the McDonald's Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.    The McDonald's Defendants have not removed such impediments and have not modified the McDonald's Facility to conform to accessibility standards.    The McDonald's Defendants have intentionally maintained the McDonald's Facility in its current condition and have intentionally refrained from altering McDonald's Facility so that it complies with the accessibility standards.

36.    Oliver further alleges that the (continued) presence of barriers at the McDonald's Facility is so obvious as to establish the McDonald's Defendants' discriminatory intent.[1]    On information and belief, Oliver avers that evidence of this discriminatory intent includes the McDonald's Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the facility; conscientious decision to the architectural layout (as it currently exists) at the McDonald's Facility; decision not to remove barriers from the McDonald's Facility; and allowance that the McDonald's Facility continues to exist in its non-compliant state.    Oliver further alleges, on

---

[1]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6

1  information and belief, that the McDonald's Defendants are not in the midst of a

2  remodel, and that the barriers present at the facility are not isolated (or

3  temporary) interruptions in access due to maintenance or repairs.[2]

4      37.   The Office Depot Defendants knew that these elements and areas of

5  the Office Depot Facility were inaccessible, violate state and federal law, and

6  interfere with (or deny) access to the physically disabled. Moreover, the Office

7  Depot Defendants have the financial resources to remove these barriers from the

8  Office Depot Facility (without much difficulty or expense), and make the Office

9  Depot Facility accessible to the physically disabled. To date, however, the

10  Office Depot Defendants refuse to either remove those barriers or seek an

11  unreasonable hardship exemption to excuse non-compliance.

12      38.   At all relevant times, the Office Depot Defendants have possessed

13  and enjoyed sufficient control and authority to modify the Office Depot Facility

14  to remove impediments to wheelchair access and to comply with the Americans

15  with Disabilities Act Accessibility Guidelines and Title 24 regulations. The

16  Office Depot Defendants have not removed such impediments and have not

17  modified the Office Depot Facility to conform to accessibility standards. The

18  Office Depot Defendants have intentionally maintained the Office Depot Facility

19  in its current condition and have intentionally refrained from altering the Office

20  Depot Facility so that it complies with the accessibility standards.

21      39.   Oliver further alleges that the (continued) presence of barriers at the

22  Office Depot Facility is so obvious as to establish The Office Depot Defendants'

23  discriminatory intent.[3] On information and belief, Oliver avers that evidence of

24  this discriminatory intent includes the Office Depot Defendants' refusal to adhere

25  to relevant building standards; disregard for the building plans and permits

26  issued for the Office Depot Facility; conscientious decision to the architectural

27

28
   [2]  Id.; 28 C.F.R. § 36.211(b)
   [3]  E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1    layout (as it currently exists) at the Office Depot Facility; decision not to remove
2    barriers from the Office Depot Facility; and allowance that the Office Depot
3    Facility continues to exist in its non-compliant state.  Oliver further alleges, on
4    information and belief, that the Office Depot Defendants are not in the midst of a
5    remodel, and that the barriers present at the Office Depot Facility are not isolated
6    (or temporary) interruptions in access due to maintenance or repairs.[4]

7        40.    The Dixieline Defendants knew that these elements and areas of the
8    Dixieline Facility were inaccessible, violate state and federal law, and interfere
9    with (or deny) access to the physically disabled.  Moreover, the Dixieline
10   Defendants have the financial resources to remove these barriers from the
11   Dixieline Facility (without much difficulty or expense), and make the Dixieline
12   Facility accessible to the physically disabled.  To date, however, the Dixieline
13   Defendants refuse to either remove those barriers or seek an unreasonable
14   hardship exemption to excuse non-compliance.

15       41.    At all relevant times, the Dixieline Defendants have possessed and
16   enjoyed sufficient control and authority to modify the Dixieline Facility to
17   remove impediments to wheelchair access and to comply with the Americans
18   with Disabilities Act Accessibility Guidelines and Title 24 regulations.   The
19   Dixieline Defendants have not removed such impediments and have not
20   modified the Dixieline Facility to conform to accessibility standards.   The
21   Dixieline Defendants have intentionally maintained the Dixieline Facility in its
22   current condition and have intentionally refrained from altering the Dixieline
23   Facility so that it complies with the accessibility standards.

24       42.    Oliver further alleges that the (continued) presence of barriers at the
25   Dixieline Facility is so obvious as to establish The Dixieline Defendants'
26   discriminatory intent.[5]  On information and belief, Oliver avers that evidence of

27

28   _____

[4]    Id.; 28 C.F.R. § 36.211(b)
[5]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1  this discriminatory intent includes the Dixieline Defendants' refusal to adhere to

2  relevant building standards; disregard for the building plans and permits issued

3  for the Dixieline Facility; conscientious decision to the architectural layout (as it

4  currently exists) at the Dixieline Facility; decision not to remove barriers from

5  the Dixieline Facility; and allowance that the Dixieline Facility continues to exist

6  in its non-compliant state. Oliver further alleges, on information and belief, that

7  the Dixieline Defendants are not in the midst of a remodel, and that the barriers

8  present at the Dixieline Facility are not isolated (or temporary) interruptions in

9  access due to maintenance or repairs.[6]

10      43.    The Grocery Outlet Defendants knew that these elements and areas

11  of the Grocery Outlet Facility were inaccessible, violate state and federal law,

12  and interfere with (or deny) access to the physically disabled. Moreover, the

13  Grocery Outlet Defendants have the financial resources to remove these barriers

14  from the Grocery Outlet Facility (without much difficulty or expense), and make

15  the facility accessible to the physically disabled. To date, however, the Grocery

16  Outlet Defendants refuse to either remove those barriers or seek an unreasonable

17  hardship exemption to excuse non-compliance.

18      44.    At all relevant times, the Grocery Outlet Defendants have possessed

19  and enjoyed sufficient control and authority to modify the Grocery Outlet

20  Facility to remove impediments to wheelchair access and to comply with the

21  Americans with Disabilities Act Accessibility Guidelines and Title 24

22  regulations.    The Grocery Outlet Defendants have not removed such

23  impediments and have not modified the Grocery Outlet Facility to conform to

24  accessibility standards. The Grocery Outlet Defendants have intentionally

25  maintained the Grocery Outlet Facility in its current condition and have

26

27

28

---

[6]  Id.; 28 C.F.R. § 36.211(b)

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1  intentionally refrained from altering the Grocery Outlet Facility so that it
2  complies with the accessibility standards.

3      45.    Oliver further alleges that the (continued) presence of barriers at the
4  Grocery Outlet Facility is so obvious as to establish the Grocery Outlet
5  Defendants' discriminatory intent.[7]  On information and belief, Oliver avers that
6  evidence of this discriminatory intent includes the Grocery Outlet Defendants'
7  refusal to adhere to relevant building standards; disregard for the building plans
8  and permits issued for the Grocery Outlet Facility; conscientious decision to the
9  architectural layout (as it currently exists) at the Grocery Outlet Facility; decision
10 not to remove barriers from the Grocery Outlet Facility; and allowance that the
11 Grocery Outlet Facility continues to exist in its non-compliant state.  Oliver
12 further alleges, on information and belief, that the Grocery Outlet Defendants are
13 not in the midst of a remodel, and that the barriers present at the Grocery Outlet
14 Facility are not isolated (or temporary) interruptions in access due to
15 maintenance or repairs.[8]

16     46.    The Party City Defendants knew that these elements and areas of the
17 Party City Facility were inaccessible, violate state and federal law, and interfere
18 with (or deny) access to the physically disabled.  Moreover, the Party City
19 Defendants have the financial resources to remove these barriers from the Party
20 City Facility (without much difficulty or expense), and make the Party City
21 Facility accessible to the physically disabled.  To date, however, the Party City
22 Defendants refuse to either remove those barriers or seek an unreasonable
23 hardship exemption to excuse non-compliance.

24     47.    At all relevant times, the Party City Defendants have possessed and
25 enjoyed sufficient control and authority to modify the Party City Facility to
26 remove impediments to wheelchair access and to comply with the Americans

27

28  [7]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
     [8]   *Id.*; 28 C.F.R. § 36.211(b)
     *Oliver v. Southbay Marketplace Holdings, LLC, et al.*
     Plaintiff's Complaint

1    with Disabilities Act Accessibility Guidelines and Title 24 regulations.  The
2    Party City Defendants have not removed such impediments and have not
3    modified the Party City Facility to conform to accessibility standards.  The Party
4    City Defendants have intentionally maintained the Party City Facility in its
5    current condition and have intentionally refrained from altering the Party City
6    Facility so that it complies with the accessibility standards.

7         48.    Oliver further alleges that the (continued) presence of barriers at the
8    facility is so obvious as to establish the Party City Defendants' discriminatory
9    intent.[9]    On information and belief, Oliver avers that evidence of this
10   discriminatory intent includes the Party City Defendants' refusal to adhere to
11   relevant building standards; disregard for the building plans and permits issued
12   for the Party City Facility; conscientious decision to the architectural layout (as it
13   currently exists) at the Party City Facility; decision not to remove barriers from
14   the Party City Facility; and allowance that the Party City Facility continues to
15   exist in its non-compliant state.  Oliver further alleges, on information and belief,
16   that the Party City Defendants are not in the midst of a remodel, and that the
17   barriers present at the Party City Facility are not isolated (or temporary)
18   interruptions in access due to maintenance or repairs.[10]

19        49.    The Ross Defendants knew that these elements and areas of the
20   Ross Facility were inaccessible, violate state and federal law, and interfere with
21   (or deny) access to the physically disabled.  Moreover, the Ross Defendants have
22   the financial resources to remove these barriers from the Ross Facility (without
23   much difficulty or expense), and make the Ross Facility accessible to the
24   physically disabled.  To date, however, the Ross Defendants refuse to either
25   remove those barriers or seek an unreasonable hardship exemption to excuse
26   non-compliance.

27

28

---

[9]   E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[10]  Id.; 28 C.F.R. § 36.211(b)
*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

50.    At all relevant times, the Ross Defendants have possessed and enjoyed sufficient control and authority to modify the Ross Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.    The Ross Defendants have not removed such impediments and have not modified the Ross Facility to conform to accessibility standards.    The Ross Defendants have intentionally maintained the Ross Facility in its current condition and have intentionally refrained from altering the Ross Facility so that it complies with the accessibility standards.

51.    Oliver further alleges that the (continued) presence of barriers at the facility is so obvious as to establish the Ross Defendants' discriminatory intent.[11] On information and belief, Oliver avers that evidence of this discriminatory intent includes the Ross Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Ross Facility; conscientious decision to the architectural layout (as it currently exists) at the Ross Facility; decision not to remove barriers from the Ross Facility; and allowance that the Ross Facility continues to exist in its non-compliant state. Oliver further alleges, on information and belief, that the Ross Defendants are not in the midst of a remodel, and that the barriers present at the Ross Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.[12]

---

[11]    E.g., *Gunther v. Lin*, 144 Cal.App.4th 223, fn. 6
[12]    Id.; 28 C.F.R. § 36.211(b)
*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

# VI. FIRST CLAIM

## Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The McDonald's Facility)

52.    Oliver incorporates the allegations contained in paragraphs 1 through 51 for this claim.

53.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

54.    The McDonald's Defendants discriminated against Oliver by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the McDonald's Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

55.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).    The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

56.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

57.    Here, Oliver alleges that the McDonald's Defendants can easily remove the architectural barriers at the McDonald's Facility without much

1  difficulty or expense, and that the McDonald's Defendants violated the ADA by

2  failing to remove those barriers, when it was readily achievable to do so.

3      58.    In the alternative, if it was not "readily achievable" for the

4  McDonald's Defendants to remove the McDonald's Facility's barriers, then the

5  McDonald's Defendants violated the ADA by failing to make the required

6  services available through alternative methods, which are readily achievable.

7              Failure to Design and Construct an Accessible Facility

8      59.    On information and belief, the McDonald's Facility was designed or

9  constructed (or both) after January 26, 1992—independently triggering access

10  requirements under Title III of the ADA.

11      60.    The ADA also prohibits designing and constructing facilities for

12  first occupancy after January 26, 1993, that aren't readily accessible to, and

13  usable by, individuals with disabilities when it was structurally practicable to do

14  so. 42 U.S.C. § 12183(a)(1).

15      61.    Here, the McDonald's Defendants violated the ADA by designing

16  or constructing (or both) the McDonald's Facility in a manner that was not

17  readily accessible to the physically disabled public—including Oliver—when it

18  was structurally practical to do so.[13]

19              Failure to Make an Altered Facility Accessible

20      62.    On information and belief, the McDonald's Facility was modified

21  after January 26, 1992, independently triggering access requirements under the

22  ADA.

23      63.    The ADA also requires that facilities altered in a manner that affects

24  (or could affect) its usability must be made readily accessible to individuals with

25  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

26  an area that contains a facility's primary function also requires adding making

27

28  [13]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
        private attorney general under either state or federal statutes.

Oliver v. Southbay Marketplace Holdings, LLC, et al.
Plaintiff's Complaint

1   the paths of travel, bathrooms, telephones, and drinking fountains serving that

2   area accessible to the maximum extent feasible. Id.

3       64.   Here, the McDonald's Defendants altered the McDonald's Facility

4   in a manner that violated the ADA and was not readily accessible to the

5   physically disabled public—including Oliver—to the maximum extent feasible.

6   <div align="center">Failure to Modify Existing Policies and Procedures</div>

7       65.   The ADA also requires reasonable modifications in policies,

8   practices, or procedures, when necessary to afford such goods, services,

9   facilities, or accommodations to individuals with disabilities, unless the entity

10   can demonstrate that making such modifications would fundamentally alter their

11   nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

12       66.   Here, the McDonald's Defendants violated the ADA by failing to

13   make reasonable modifications in policies, practices, or procedures at the

14   McDonald's Facility, when these modifications were necessary to afford (and

15   would not fundamentally alter the nature of) these goods, services, facilities, or

16   accommodations.

17       67.   Oliver seeks all relief available under the ADA (*i.e.*, injunctive

18   relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

19   U.S.C. § 12205.

20       68.   Oliver also seeks a finding from this Court (*i.e.,* declaratory relief)

21   that the McDonald's Defendants violated the ADA in order to pursue damages

22   under California's Unruh Civil Rights Act or Disabled Persons Act.

23   <div align="center">VII. SECOND CLAIM</div>

24   <div align="center">**Disabled Persons Act**</div>

25   <div align="center">(The McDonald's Facility)</div>

26       69.   Oliver incorporates the allegations contained in paragraphs 1

27   through 68 for this claim.

28

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

70.    California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

71.    California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

72.    Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

73.    Here, the McDonald's Defendants discriminated against the physically disabled public—including Oliver—by denying them full and equal access to the McDonald's Facility. The McDonald's Defendants also violated Oliver's rights under the ADA, and, therefore, infringed upon or violated (or both) Oliver's rights under the Disabled Persons Act.

74.    For each offense of the Disabled Persons Act, Oliver seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

75.    He also seeks to enjoin the McDonald's Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## VIII. THIRD CLAIM

### Unruh Civil Rights Act

(The McDonald's Facility)

76.    Oliver incorporates the allegations contained in paragraphs 1 through 75 for this claim.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

77.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

78.     California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

79.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

80.     The McDonald's Defendants' aforementioned acts and omissions denied the physically disabled public—including Oliver—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

81.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Oliver by violating the Unruh Act.

82.     Oliver was damaged by The McDonald's Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

83.     Oliver also seeks to enjoin the McDonald's Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## IX. FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The McDonald's Facility)

84.     Oliver incorporates the allegations contained in paragraphs 1 through 83 for this claim.

85. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

86. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

87. Oliver alleges the McDonald's Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the McDonald's Facility was not exempt under Health and Safety Code § 19956.

88. The McDonald's Defendants' non-compliance with these requirements at the McDonald's Facility aggrieved (or potentially aggrieved) Oliver and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X. FIFTH CLAIM

### Americans with Disabilities Act of 1990

### Denial of "Full and Equal" Enjoyment and Use

(The Office Depot Facility)

89. Oliver incorporates the allegations contained in paragraphs 1 through 88 for this claim.

90. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

91. The Office Depot Defendants discriminated against Oliver by denying "full and equal enjoyment" and use of the goods, services, facilities,

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1    privileges or accommodations of the Office Depot Facility during each visit and
2    each incident of deterrence.

3    Failure to Remove Architectural Barriers in an Existing Facility

4    92.    The ADA specifically prohibits failing to remove architectural
5    barriers, which are structural in nature, in existing facilities where such removal
6    is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).    The term "readily
7    achievable" is defined as "easily accomplishable and able to be carried out
8    without much difficulty or expense." Id. § 12181(9).

9    93.    When an entity can demonstrate that removal of a barrier is not
10   readily achievable, a failure to make goods, services, facilities, or
11   accommodations available through alternative methods is also specifically
12   prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

13   94.    Here, Oliver alleges that the Office Depot Defendants can easily
14   remove the architectural barriers at the Office Depot Facility without much
15   difficulty or expense, and that the Office Depot Defendants violated the ADA by
16   failing to remove those barriers, when it was readily achievable to do so.

17   95.    In the alternative, if it was not "readily achievable" for the Office
18   Depot Defendants to remove the Office Depot Facility's barriers, then the Office
19   Depot Defendants violated the ADA by failing to make the required services
20   available through alternative methods, which are readily achievable.

21   Failure to Design and Construct an Accessible Facility

22   96.    On information and belief, the Office Depot Facility was designed
23   or constructed (or both) after January 26, 1992—independently triggering access
24   requirements under Title III of the ADA.

25   97.    The ADA also prohibits designing and constructing facilities for
26   first occupancy after January 26, 1993, that aren't readily accessible to, and
27   usable by, individuals with disabilities when it was structurally practicable to do
28   so. 42 U.S.C. § 12183(a)(1).

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

Page 24

1    98.    Here, the Office Depot Defendants violated the ADA by designing

2  or constructing (or both) the Office Depot Facility in a manner that was not

3  readily accessible to the physically disabled public—including Oliver—when it

4  was structurally practical to do so.[14]

5    <u>Failure to Make an Altered Facility Accessible</u>

6    99.    On information and belief, the Office Depot Facility was modified

7  after January 26, 1992, independently triggering access requirements under the

8  ADA.

9    100.    The ADA also requires that facilities altered in a manner that affects

10  (or could affect) its usability must be made readily accessible to individuals with

11  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).    Altering

12  an area that contains a facility's primary function also requires adding making

13  the paths of travel, bathrooms, telephones, and drinking fountains serving that

14  area accessible to the maximum extent feasible. <u>Id.</u>

15    101.    Here, the Office Depot Defendants altered the Office Depot Facility

16  in a manner that violated the ADA and was not readily accessible to the

17  physically disabled public—including Oliver—to the maximum extent feasible.

18    <u>Failure to Modify Existing Policies and Procedures</u>

19    102.    The ADA also requires reasonable modifications in policies,

20  practices, or procedures, when necessary to afford such goods, services,

21  facilities, or accommodations to individuals with disabilities, unless the entity

22  can demonstrate that making such modifications would fundamentally alter their

23  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24    103.    Here, the Office Depot Defendants violated the ADA by failing to

25  make reasonable modifications in policies, practices, or procedures at the Office

26  Depot Facility, when these modifications were necessary to afford (and would

27

28  [14] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

1   not fundamentally alter the nature of) these goods, services, facilities, or

2   accommodations.

3   104. Oliver seeks all relief available under the ADA (*i.e.*, injunctive

4   relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

5   U.S.C. § 12205.

6   105. Oliver also seeks a finding from this Court (*i.e.,* declaratory relief)

7   that Office Depot violated the ADA in order to pursue damages under

8   California's Unruh Civil Rights Act or Disabled Persons Act.

9   XI. SIXTH CLAIM

10   **Disabled Persons Act**

11   (The Office Depot Facility)

12   106. Oliver incorporates the allegations contained in paragraphs 1

13   through 105 for this claim.

14   107. California Civil Code § 54 states, in part, that: Individuals with

15   disabilities have the same right as the general public to the full and free use of

16   the streets, sidewalks, walkways, public buildings and facilities, and other public

17   places.

18   108. California Civil Code § 54.1 also states, in part, that: Individuals

19   with disabilities shall be entitled to full and equal access to accommodations,

20   facilities, telephone facilities, places of public accommodation, and other places

21   to which the general public is invited.

22   109. Both sections specifically incorporate (by reference) an individual's

23   rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

24   110. Here, the Office Depot Defendants discriminated against the

25   physically disabled public—including Oliver—by denying them full and equal

26   access to the Office Depot Facility. The Office Depot Defendants also violated

27   Oliver's rights under the ADA, and, therefore, infringed upon or violated (or

28   both) Oliver's rights under the Disabled Persons Act.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

111. <u>For each offense</u> of the Disabled Persons Act, Oliver seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

112. He also seeks to enjoin the Office Depot Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XII. SEVENTH CLAIM

### Unruh Civil Rights Act

(The Office Depot Facility)

113. Oliver incorporates the allegations contained in paragraphs 1 through 112 for this claim.

114. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

115. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

116. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

117. The Office Depot Defendants' aforementioned acts and omissions denied the physically disabled public—including Oliver—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

118.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Oliver by violating the Unruh Act.

119.    Oliver was damaged by the Office Depot Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

120.    Oliver also seeks to enjoin the Office Depot Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XIII. EIGHTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Office Depot Facility)

121.    Oliver incorporates the allegations contained in paragraphs 1 through 120 for this claim.

122.    Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

123.    Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

124.    Oliver alleges the Office Depot Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Office Depot Facility was not exempt under Health and Safety Code § 19956.

125.    The Office Depot Defendants' non-compliance with these requirements at the Office Depot Facility aggrieved (or potentially aggrieved) Oliver and other persons with physical disabilities.    Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

# XIV. NINTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Dixieline Facility)

126. Oliver incorporates the allegations contained in paragraphs 1 through 125 for this claim.

127. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

128. The Dixieline Defendants discriminated against Oliver by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Dixieline Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

129. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

130. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

131. Here, Oliver alleges that the Dixieline Defendants can easily remove the architectural barriers at the Dixieline Facility without much difficulty or

1   expense, and that the Dixieline Defendants violated the ADA by failing to

2   remove those barriers, when it was readily achievable to do so.

3      132.   In the alternative, if it was not "readily achievable" for the Dixieline

4   Defendants to remove the Dixieline Facility's barriers, then the Dixieline

5   Defendants violated the ADA by failing to make the required services available

6   through alternative methods, which are readily achievable.

7              Failure to Design and Construct an Accessible Facility

8      133.   On information and belief, the Dixieline Facility was designed or

9   constructed (or both) after January 26, 1992—independently triggering access

10   requirements under Title III of the ADA.

11      134.   The ADA also prohibits designing and constructing facilities for

12   first occupancy after January 26, 1993, that aren't readily accessible to, and

13   usable by, individuals with disabilities when it was structurally practicable to do

14   so. 42 U.S.C. § 12183(a)(1).

15      135.   Here, the Dixieline Defendants violated the ADA by designing or

16   constructing (or both) the Dixieline Facility in a manner that was not readily

17   accessible to the physically disabled public—including Oliver—when it was

18   structurally practical to do so.[15]

19              Failure to Make an Altered Facility Accessible

20      136.   On information and belief, the Dixieline Facility was modified after

21   January 26, 1992, independently triggering access requirements under the ADA.

22      137.   The ADA also requires that facilities altered in a manner that affects

23   (or could affect) its usability must be made readily accessible to individuals with

24   disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).   Altering

25   an area that contains a facility's primary function also requires adding making

26

27

28   ---

[15]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
         private attorney general under either state or federal statutes.
Oliver v. Southbay Marketplace Holdings, LLC, et al.
Plaintiff's Complaint

1    the paths of travel, bathrooms, telephones, and drinking fountains serving that
2    area accessible to the maximum extent feasible. Id.

3    138.  Here, the Dixieline Defendants altered the Dixieline Facility in a
4    manner that violated the ADA and was not readily accessible to the physically
5    disabled public—including Oliver—to the maximum extent feasible.

6    <u>Failure to Modify Existing Policies and Procedures</u>

7    139.  The ADA also requires reasonable modifications in policies,
8    practices, or procedures, when necessary to afford such goods, services,
9    facilities, or accommodations to individuals with disabilities, unless the entity
10   can demonstrate that making such modifications would fundamentally alter their
11   nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

12   140.  Here, the Dixieline Defendants violated the ADA by failing to make
13   reasonable modifications in policies, practices, or procedures at the Dixieline
14   Facility, when these modifications were necessary to afford (and would not
15   fundamentally alter the nature of) these goods, services, facilities, or
16   accommodations.

17   141.  Oliver seeks all relief available under the ADA (*i.e.*, injunctive
18   relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
19   U.S.C. § 12205.

20   142.  Oliver also seeks a finding from this Court (*i.e.,* declaratory relief)
21   that the Dixieline Defendants violated the ADA in order to pursue damages
22   under California's Unruh Civil Rights Act or Disabled Persons Act.

<div align="center">

XV. TENTH CLAIM

**Disabled Persons Act**

(The Dixieline Facility)

</div>

26   143.  Oliver incorporates the allegations contained in paragraphs 1
27   through 142 for this claim.

144.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

145.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

146.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

147.   Here, the Dixieline Defendants discriminated against the physically disabled public—including Oliver—by denying them full and equal access to the Dixieline Facility.  The Dixieline Defendants also violated Oliver's rights under the ADA, and, therefore, infringed upon or violated (or both) Oliver's rights under the Disabled Persons Act.

148.   For each offense of the Disabled Persons Act, Oliver seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

149.   He also seeks to enjoin the Dixieline Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

<div align="center">

### XVI. ELEVENTH CLAIM

### Unruh Civil Rights Act

(The Dixieline Facility)

</div>

150.   Oliver incorporates the allegations contained in paragraphs 1 through 149 for this claim.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

151.  California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

152.  California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

153.  California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

154.  The Dixieline Defendants' aforementioned acts and omissions denied the physically disabled public—including Oliver—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

155.  These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Oliver by violating the Unruh Act.

156.  Oliver was damaged by the Dixieline Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

157.  Oliver also seeks to enjoin the Dixieline Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

<div align="center">

XVII. TWELFTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Dixieline Facility)

</div>

158.  Oliver incorporates the allegations contained in paragraphs 1 through 157 for this claim.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1    159.  Health and Safety Code § 19955(a) states, in part, that: California

2  public accommodations or facilities (built with private funds) shall adhere to the

3  provisions of Government Code § 4450.

4    160.  Health and Safety Code § 19959 states, in part, that: Every existing

5  (non-exempt) public accommodation constructed prior to July 1, 1970, which is

6  altered or structurally repaired, is required to comply with this chapter.

7    161.  Oliver alleges the Dixieline Facility is a public accommodation

8  constructed, altered, or repaired in a manner that violates Part 5.5 of the Health

9  and Safety Code or Government Code § 4450 (or both), and that the Dixieline

10  Facility was not exempt under Health and Safety Code § 19956.

11    162.  The Dixieline Defendants' non-compliance with these requirements

12  at the Dixieline Facility aggrieved (or potentially aggrieved) Oliver and other

13  persons with physical disabilities.  Accordingly, he seeks injunctive relief and

14  attorney fees pursuant to Health and Safety Code § 19953.

15                    XVIII. THIRTEENTH CLAIM

16              **Americans with Disabilities Act of 1990**

17              Denial of "Full and Equal" Enjoyment and Use

18                    (The Grocery Outlet Facility)

19    163.  Oliver incorporates the allegations contained in paragraphs 1

20  through 162 for this claim.

21    164.  Title III of the ADA holds as a "general rule" that no individual

22  shall be discriminated against on the basis of disability in the full and equal

23  enjoyment (or use) of goods, services, facilities, privileges, and accommodations

24  offered by any person who owns, operates, or leases a place of public

25  accommodation. 42 U.S.C. § 12182(a).

26    165.  The Grocery Outlet Defendants discriminated against Oliver by

27  denying "full and equal enjoyment" and use of the goods, services, facilities,

28

1   privileges or accommodations of the Grocery Outlet Facility during each visit

2   and each incident of deterrence.

3   Failure to Remove Architectural Barriers in an Existing Facility

4   166. The ADA specifically prohibits failing to remove architectural

5   barriers, which are structural in nature, in existing facilities where such removal

6   is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).    The term "readily

7   achievable" is defined as "easily accomplishable and able to be carried out

8   without much difficulty or expense." Id. § 12181(9).

9   167. When an entity can demonstrate that removal of a barrier is not

10   readily achievable, a failure to make goods, services, facilities, or

11   accommodations available through alternative methods is also specifically

12   prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

13   168. Here, Oliver alleges that the Grocery Outlet Defendants can easily

14   remove the architectural barriers at the Grocery Outlet Facility without much

15   difficulty or expense, and that the Grocery Outlet Defendants violated the ADA

16   by failing to remove those barriers, when it was readily achievable to do so.

17   169. In the alternative, if it was not "readily achievable" for the Grocery

18   Outlet Defendants to remove the Grocery Outlet Facility's barriers, then the

19   Grocery Outlet Defendants violated the ADA by failing to make the required

20   services available through alternative methods, which are readily achievable.

21   Failure to Design and Construct an Accessible Facility

22   170. On information and belief, the Grocery Outlet Facility was designed

23   or constructed (or both) after January 26, 1992—independently triggering access

24   requirements under Title III of the ADA.

25   171. The ADA also prohibits designing and constructing facilities for

26   first occupancy after January 26, 1993, that aren't readily accessible to, and

27   usable by, individuals with disabilities when it was structurally practicable to do

28   so. 42 U.S.C. § 12183(a)(1).

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1  172.  Here, the Grocery Outlet Defendants violated the ADA by designing

2  or constructing (or both) the Grocery Outlet Facility in a manner that was not

3  readily accessible to the physically disabled public—including Oliver—when it

4  was structurally practical to do so.[16]

5  <div align="center">Failure to Make an Altered Facility Accessible</div>

6  173.  On information and belief, the Grocery Outlet Facility was modified

7  after January 26, 1992, independently triggering access requirements under the

8  ADA.

9  174.  The ADA also requires that facilities altered in a manner that affects

10  (or could affect) its usability must be made readily accessible to individuals with

11  disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering

12  an area that contains a facility's primary function also requires adding making

13  the paths of travel, bathrooms, telephones, and drinking fountains serving that

14  area accessible to the maximum extent feasible. Id.

15  175.  Here, the Grocery Outlet Defendants altered the Grocery Outlet

16  Facility in a manner that violated the ADA and was not readily accessible to the

17  physically disabled public—including Oliver—to the maximum extent feasible.

18  <div align="center">Failure to Modify Existing Policies and Procedures</div>

19  176.  The ADA also requires reasonable modifications in policies,

20  practices, or procedures, when necessary to afford such goods, services,

21  facilities, or accommodations to individuals with disabilities, unless the entity

22  can demonstrate that making such modifications would fundamentally alter their

23  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24  177.  Here, the Grocery Outlet Defendants violated the ADA by failing to

25  make reasonable modifications in policies, practices, or procedures at the

26  Grocery Outlet Facility, when these modifications were necessary to afford (and

27

28  ---

[16]  Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

<div align="center">Page 36</div>

1  would not fundamentally alter the nature of) these goods, services, facilities, or
2  accommodations.

3    178.  Oliver seeks all relief available under the ADA (*i.e.*, injunctive
4  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
5  U.S.C. § 12205.

6    179.  Oliver also seeks a finding from this Court (*i.e.*, declaratory relief)
7  that the Grocery Outlet Defendants violated the ADA in order to pursue damages
8  under California's Unruh Civil Rights Act or Disabled Persons Act.

9                        XIX. FOURTEENTH CLAIM
10                          **Disabled Persons Act**
11                        (The Grocery Outlet Facility)

12    180.  Oliver incorporates the allegations contained in paragraphs 1
13  through 179 for this claim.

14    181.  California Civil Code § 54 states, in part, that: Individuals with
15  disabilities have the same right as the general public to the full and free use of
16  the streets, sidewalks, walkways, public buildings and facilities, and other public
17  places.

18    182.  California Civil Code § 54.1 also states, in part, that: Individuals
19  with disabilities shall be entitled to full and equal access to accommodations,
20  facilities, telephone facilities, places of public accommodation, and other places
21  to which the general public is invited.

22    183.  Both sections specifically incorporate (by reference) an individual's
23  rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

24    184.  Here, the Grocery Outlet Defendants discriminated against the
25  physically disabled public—including Oliver—by denying them full and equal
26  access to the Grocery Outlet Facility.  The Grocery Outlet Defendants also
27  violated Oliver's rights under the ADA, and, therefore, infringed upon or
28  violated (or both) Oliver's rights under the Disabled Persons Act.

185. <u>For each offense</u> of the Disabled Persons Act, Oliver seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

186. He also seeks to enjoin the Grocery Outlet Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XX. FIFTEENTH CLAIM

### Unruh Civil Rights Act

(The Grocery Outlet Facility)

187. Oliver incorporates the allegations contained in paragraphs 1 through 186 for this claim.

188. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

189. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

190. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

191. The Grocery Outlet Defendants' aforementioned acts and omissions denied the physically disabled public—including Oliver—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

192. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Oliver by violating the Unruh Act.

193. Oliver was damaged by the Grocery Outlet Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

194. Oliver also seeks to enjoin the Grocery Outlet Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XXI. SIXTEENTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Grocery Outlet Facility)

195. Oliver incorporates the allegations contained in paragraphs 1 through 194 for this claim.

196. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

197. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

198. Oliver alleges the Grocery Outlet Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Grocery Outlet Facility was not exempt under Health and Safety Code § 19956.

199. The Grocery Outlet Defendants' non-compliance with these requirements at the Grocery Outlet Facility aggrieved (or potentially aggrieved)

1  Oliver and other persons with physical disabilities.    Accordingly, he seeks
2  injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

3  <center>XXII. SEVENTEENTH CLAIM</center>

4  <center>**Americans with Disabilities Act of 1990**</center>

5  <center>Denial of "Full and Equal" Enjoyment and Use</center>

6  <center>(The Party City Facility)</center>

7    200.  Oliver incorporates the allegations contained in paragraphs 1
8  through 199 for this claim.

9    201.  Title III of the ADA holds as a "general rule" that no individual
10  shall be discriminated against on the basis of disability in the full and equal
11  enjoyment (or use) of goods, services, facilities, privileges, and accommodations
12  offered by any person who owns, operates, or leases a place of public
13  accommodation. 42 U.S.C. § 12182(a).

14    202.  The Party City Defendants discriminated against Oliver by denying
15  "full and equal enjoyment" and use of the goods, services, facilities, privileges or
16  accommodations of the Party City Facility during each visit and each incident of
17  deterrence.

18  <center>Failure to Remove Architectural Barriers in an Existing Facility</center>

19    203.  The ADA specifically prohibits failing to remove architectural
20  barriers, which are structural in nature, in existing facilities where such removal
21  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).    The term "readily
22  achievable" is defined as "easily accomplishable and able to be carried out
23  without much difficulty or expense." Id. § 12181(9).

24    204.  When an entity can demonstrate that removal of a barrier is not
25  readily achievable, a failure to make goods, services, facilities, or
26  accommodations available through alternative methods is also specifically
27  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

28

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

<center>Page 40</center>

1    205.   Here, Oliver alleges that the Party City Defendants can easily

2    remove the architectural barriers at the Party City Facility without much

3    difficulty or expense, and that Party City violated the ADA by failing to remove

4    those barriers, when it was readily achievable to do so.

5    206.   In the alternative, if it was not "readily achievable" for the Party

6    City Defendants to remove the Party City Facility's barriers, then the Party City

7    Defendants violated the ADA by failing to make the required services available

8    through alternative methods, which are readily achievable.

9    <u>Failure to Design and Construct an Accessible Facility</u>

10    207.   On information and belief, the Party City Facility was designed or

11    constructed (or both) after January 26, 1992—independently triggering access

12    requirements under Title III of the ADA.

13    208.   The ADA also prohibits designing and constructing facilities for

14    first occupancy after January 26, 1993, that aren't readily accessible to, and

15    usable by, individuals with disabilities when it was structurally practicable to do

16    so. 42 U.S.C. § 12183(a)(1).

17    209.   Here, the Party City Defendants violated the ADA by designing or

18    constructing (or both) the Party City Facility in a manner that was not readily

19    accessible to the physically disabled public—including Oliver—when it was

20    structurally practical to do so.[17]

21    <u>Failure to Make an Altered Facility Accessible</u>

22    .   210.   On information and belief, the Party City Facility was modified after

23    January 26, 1992, independently triggering access requirements under the ADA.

24    211.   The ADA also requires that facilities altered in a manner that affects

25    (or could affect) its usability must be made readily accessible to individuals with

26    disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).   Altering

27    _____

28    [17]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
       private attorney general under either state or federal statutes.
       *Oliver v. Southbay Marketplace Holdings, LLC, et al.*
       Plaintiff's Complaint

1  an area that contains a facility's primary function also requires adding making

2  the paths of travel, bathrooms, telephones, and drinking fountains serving that

3  area accessible to the maximum extent feasible. Id.

4      212.  Here, the Party City Defendants altered the Party City Facility in a

5  manner that violated the ADA and was not readily accessible to the physically

6  disabled public—including Oliver—to the maximum extent feasible.

7  <center>Failure to Modify Existing Policies and Procedures</center>

8      213.  The ADA also requires reasonable modifications in policies,

9  practices, or procedures, when necessary to afford such goods, services,

10  facilities, or accommodations to individuals with disabilities, unless the entity

11  can demonstrate that making such modifications would fundamentally alter their

12  nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

13      214.  Here, the Party City Defendants violated the ADA by failing to

14  make reasonable modifications in policies, practices, or procedures at the Party

15  City Facility, when these modifications were necessary to afford (and would not

16  fundamentally alter the nature of) these goods, services, facilities, or

17  accommodations.

18      215.  Oliver seeks all relief available under the ADA (i.e., injunctive

19  relief, attorney fees, costs, legal expense) for these aforementioned violations. 42

20  U.S.C. § 12205.

21      216.  Oliver also seeks a finding from this Court (i.e., declaratory relief)

22  that the Party City Defendants violated the ADA in order to pursue damages

23  under California's Unruh Civil Rights Act or Disabled Persons Act.

24  <center>XXIII. EIGHTEENTH CLAIM</center>

25  <center>**Disabled Persons Act**</center>

26  <center>(The Party City Facility)</center>

27      217.  Oliver incorporates the allegations contained in paragraphs 1

28  through 216 for this claim.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

218.  California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

219.  California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

220.  Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

221.  Here, the Party City Defendants discriminated against the physically disabled public—including Oliver—by denying them full and equal access to the Party City Facility.  The Party City Defendants also violated Oliver's rights under the ADA, and, therefore, infringed upon or violated (or both) Oliver's rights under the Disabled Persons Act.

222.  For each offense of the Disabled Persons Act, Oliver seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

223.  He also seeks to enjoin the Party City Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XXIV. NINETEENTH CLAIM

### Unruh Civil Rights Act

(The Party City Facility)

224.  Oliver incorporates the allegations contained in paragraphs 1 through 223 for this claim.

1    225.  California Civil Code § 51 states, in part, that: All persons within

2    the jurisdiction of this state are entitled to the full and equal accommodations,

3    advantages, facilities, privileges, or services in all business establishments of

4    every kind whatsoever.

5    226.  California Civil Code § 51.5 also states, in part, that: No business

6    establishment of any kind whatsoever shall discriminate against any person in

7    this state because of the disability of the person.

8    227.  California Civil Code § 51(f) specifically incorporates (by

9    reference) an individual's rights under the ADA into the Unruh Act.

10   228.  The Party City Defendants' aforementioned acts and omissions

11   denied the physically disabled public—including Oliver—full and equal

12   accommodations, advantages, facilities, privileges and services in a business

13   establishment (because of their physical disability).

14   229.  These acts and omissions (including the ones that violate the ADA)

15   denied, aided or incited a denial, or discriminated against Oliver by violating the

16   Unruh Act.

17   230.  Oliver was damaged by the Party City Defendants' wrongful

18   conduct, and seeks statutory minimum damages of four thousand dollars

19   ($4,000) for each offense.

20   231.  Oliver also seeks to enjoin the Party City Defendants from violating

21   the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs

22   incurred under California Civil Code § 52(a).

<div align="center">

XXV. TWENTIETH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Party City Facility)

</div>

26   232.  Oliver incorporates the allegations contained in paragraphs 1

27   through 231 for this claim.

28

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

<div align="center">Page 44</div>

1  233.  Health and Safety Code § 19955(a) states, in part, that: California

2  public accommodations or facilities (built with private funds) shall adhere to the

3  provisions of Government Code § 4450.

4  234.  Health and Safety Code § 19959 states, in part, that: Every existing

5  (non-exempt) public accommodation constructed prior to July 1, 1970, which is

6  altered or structurally repaired, is required to comply with this chapter.

7  235.  Oliver alleges the Party City Facility is a public accommodation

8  constructed, altered, or repaired in a manner that violates Part 5.5 of the Health

9  and Safety Code or Government Code § 4450 (or both), and that the Party City

10  Facility was not exempt under Health and Safety Code § 19956.

11  236.  The Party City Defendants' non-compliance with these requirements

12  at the Party City Facility aggrieved (or potentially aggrieved) Oliver and other

13  persons with physical disabilities.  Accordingly, he seeks injunctive relief and

14  attorney fees pursuant to Health and Safety Code § 19953.

15  XXVI.  TWENTY-FIRST CLAIM

16  **Americans with Disabilities Act of 1990**

17  Denial of "Full and Equal" Enjoyment and Use

18  (The Ross Facility)

19  237.  Oliver incorporates the allegations contained in paragraphs 1

20  through 236 for this claim.

21  238.  Title III of the ADA holds as a "general rule" that no individual

22  shall be discriminated against on the basis of disability in the full and equal

23  enjoyment (or use) of goods, services, facilities, privileges, and accommodations

24  offered by any person who owns, operates, or leases a place of public

25  accommodation. 42 U.S.C. § 12182(a).

26  239.  The Ross Defendants discriminated against Oliver by denying "full

27  and equal enjoyment" and use of the goods, services, facilities, privileges or

28

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1  accommodations of the Ross Facility during each visit and each incident of
2  deterrence.

3      Failure to Remove Architectural Barriers in an Existing Facility

4      240.   The ADA specifically prohibits failing to remove architectural
5  barriers, which are structural in nature, in existing facilities where such removal
6  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily
7  achievable" is defined as "easily accomplishable and able to be carried out
8  without much difficulty or expense." Id. § 12181(9).

9      241.   When an entity can demonstrate that removal of a barrier is not
10  readily achievable, a failure to make goods, services, facilities, or
11  accommodations available through alternative methods is also specifically
12  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

13      242.   Here, Oliver alleges that the Ross Defendants can easily remove the
14  architectural barriers at the Ross Facility without much difficulty or expense, and
15  that the Ross Defendants violated the ADA by failing to remove those barriers,
16  when it was readily achievable to do so.

17      243.   In the alternative, if it was not "readily achievable" for the Ross
18  Defendant to remove the Ross Facility's barriers, then the Ross Defendants
19  violated the ADA by failing to make the required services available through
20  alternative methods, which are readily achievable.

21      Failure to Design and Construct an Accessible Facility

22      244.   On information and belief, the Ross Facility was designed or
23  constructed (or both) after January 26, 1992—independently triggering access
24  requirements under Title III of the ADA.

25      245.   The ADA also prohibits designing and constructing facilities for
26  first occupancy after January 26, 1993, that aren't readily accessible to, and
27  usable by, individuals with disabilities when it was structurally practicable to do
28  so. 42 U.S.C. § 12183(a)(1).

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

246. Here, the Ross Defendants violated the ADA by designing or constructing (or both) the Ross Facility in a manner that was not readily accessible to the physically disabled public—including Oliver—when it was structurally practical to do so.[18]

### Failure to Make an Altered Facility Accessible

247. On information and belief, the Ross Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

248. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

249. Here, the Ross Defendants altered the Ross Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Oliver—to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

250. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

251. Here, the Ross Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Ross Facility, when these modifications were necessary to afford (and would not

---

[18] Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

Page 47

1    fundamentally alter the nature of) these goods, services, facilities, or
2    accommodations.

3        252.   Oliver seeks all relief available under the ADA (*i.e.*, injunctive
4    relief, attorney fees, costs, legal expense) for these aforementioned violations. 42
5    U.S.C. § 12205.

6        253.   Oliver also seeks a finding from this Court (*i.e.,* declaratory relief)
7    that the Ross Defendants violated the ADA in order to pursue damages under
8    California's Unruh Civil Rights Act or Disabled Persons Act.

9    <div align="center">XXVII.  TWENTY-SECOND CLAIM</div>

10   <div align="center">**Disabled Persons Act**</div>

11   <div align="center">(The Ross Facility)</div>

12       254.   Oliver incorporates the allegations contained in paragraphs 1
13   through 253 for this claim.

14       255.   California Civil Code § 54 states, in part, that: Individuals with
15   disabilities have the same right as the general public to the full and free use of
16   the streets, sidewalks, walkways, public buildings and facilities, and other public
17   places.

18       256.   California Civil Code § 54.1 also states, in part, that: Individuals
19   with disabilities shall be entitled to full and equal access to accommodations,
20   facilities, telephone facilities, places of public accommodation, and other places
21   to which the general public is invited.

22       257.   Both sections specifically incorporate (by reference) an individual's
23   rights under the ADA. <u>See</u> Civil Code §§ 54(c) and 54.1(d).

24       258.   Here, the Ross Defendants discriminated against the physically
25   disabled public—including Oliver—by denying them full and equal access to the
26   Ross Facility.  The Ross Defendants also violated Oliver's rights under the
27   ADA, and, therefore, infringed upon or violated (or both) Oliver's rights under
28   the Disabled Persons Act.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

<div align="center">Page 48</div>

259.    For each offense of the Disabled Persons Act, Oliver seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

260.    He also seeks to enjoin the Ross Defendants from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XXVIII. TWENTY-THIRD CLAIM

### Unruh Civil Rights Act

(The Ross Facility)

261.    Oliver incorporates the allegations contained in paragraphs 1 through 260 for this claim.

262.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

263.    California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

264.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

265.    The Ross Defendants' aforementioned acts and omissions denied the physically disabled public—including Oliver—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

266.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Oliver by violating the Unruh Act.

267.   Oliver was damaged by the Ross Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

268.   Oliver also seeks to enjoin the Ross Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XXIX. TWENTY-FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Ross Facility)

269.   Oliver incorporates the allegations contained in paragraphs 1 through 268 for this claim.

270.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

271.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

272.   Oliver alleges the Ross Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Ross Facility was not exempt under Health and Safety Code § 19956.

273.   The Ross Defendants' non-compliance with these requirements at the Ross Facility aggrieved (or potentially aggrieved) Oliver and other persons with physical disabilities.   Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

1

## XXX.  PRAYER FOR RELIEF

2 WHEREFORE, Oliver prays judgment against the McDonald's Defendants for:

3 1.    Injunctive relief, preventive relief, or any other relief the Court deems

4 proper.

5 2.    Declaratory relief that the McDonald's Defendants violated the ADA for

6 the purposes of Unruh Act or Disabled Persons Act damages.

7 3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the

8 California Civil Code (but not both) according to proof.

9 4.    Attorneys' fees, litigation expenses, and costs of suit.[19]

10 5.    Interest at the legal rate from the date of the filing of this action.

11

## XXXI. PRAYER FOR RELIEF

12 WHEREFORE, Oliver prays judgment against the Office Depot Defendants for:

13 1.    Injunctive relief, preventive relief, or any other relief the Court deems

14 proper.

15 2.    Declaratory relief that the Office Depot Defendants violated the ADA for

16 the purposes of Unruh Act or Disabled Persons Act damages.

17 3.    Statutory minimum damages under either sections 52(a) or 54.3(a) of the

18 California Civil Code (but not both) according to proof.

19 4.    Attorneys' fees, litigation expenses, and costs of suit.[20]

20 5.    Interest at the legal rate from the date of the filing of this action.

21

## XXXII. PRAYER FOR RELIEF

22 WHEREFORE, Oliver prays judgment against the Dixieline Defendants for:

23 1.    Injunctive relief, preventive relief, or any other relief the Court deems

24 proper.

25 2.    Declaratory relief that the Dixieline Defendants violated the ADA for the

26 purposes of Unruh Act or Disabled Persons Act damages.

27

28
---
[19] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[20] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[21]

5.      Interest at the legal rate from the date of the filing of this action.

## XXXIII. PRAYER FOR RELIEF

WHEREFORE, Oliver prays judgment against the Grocery Outlet Defendants for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that the Grocery Outlet Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[22]

5.      Interest at the legal rate from the date of the filing of this action.

## XXXIV. PRAYER FOR RELIEF

WHEREFORE, Oliver prays judgment against the Party City Defendants for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that the Party City Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[23]

5.      Interest at the legal rate from the date of the filing of this action.

---

[21] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[22] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[23] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

## XXXV. PRAYER FOR RELIEF

WHEREFORE, Oliver prays judgment against the Ross Defendants for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that the Ross Defendants violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[24]

5.      Interest at the legal rate from the date of the filing of this action.


DATED: July 23, 2008                 DISABLED ADVOCACY GROUP, APLC



LYNN HUBBARD, III
Attorney for Plaintiff, A.J. Oliver

---

[24]   This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
*Oliver v. Southbay Marketplace Holdings, LLC, et al.*
Plaintiff's Complaint

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 153449    — MB**

**July 29. 2008
10:57:03**

**Civ Fil Non—Pris**
USAO #.: 08CV1364 CIVIL FILING
Judge..: LARRY A BURNS
Amount.:                    $350.00 CC

**Total—>   $350.00**

FROM: A.J. OLIVER VS SOUTHBAY
      MARKETPLACE HOLDINGS, PARTY
      CITY, ET AL

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**FILED**

**JUL 2 4 2008**

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**BY** _____ **DEPUTY**

## I. (a) PLAINTIFFS

A.J. OLIVER

**DEFENDANTS**

Please see attached list

**(b)** County of Residence of First Listed Plaintiff   SAN DIEGO

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

DISABLED ADVOCACY GROUP, APLC (530) 895-3252
12 WILLIAMSBURG LANE CHICO, CA 95926

Attorneys (If Known)

**08 CV 1364 LAB POR**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury— Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 12101, et seq.

Brief description of cause:
Ongoing violations of the ADA Construction Standards

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
07/21/2008

SIGNATURE OF ATTORNEY

**FOR OFFICE USE ONLY**

RECEIPT # 153449   AMOUNT $350.00   APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

NB 07/29/08

CR

# **LIST OF DEFENDANTS**

1.    SOUTHBAY MARKETPLACE HOLDINGS, LLC
2.    PARTY CITY CORPORATION dba PARTY CITY of NATIONAL CITY #521
3.    MAC N FRY, INC. dba McDONALD'S
4.    McDONALD'S CORPORATION
5.    GROCERY OUTLET, INC. dba GROCERY OUTLET #145
6.    ROSS DRESS FOR LESS, INC. dba ROSS DRESS FOR LESS #393
7.    THE OFFICE CLUB, INC. dba OFFICE DEPOT #0963
8.    DLC ACQUISITION CORP. dba DIXIELINE LUMBER & HOME CENTER
9.    LN REAL ESTATE, LLC